[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 78 
The plaintiffs appeal from a summary judgment in favor of the defendant on the plaintiffs' claims of fraud by misrepresentation and suppression.
Virginia N. LaCoste and her sons, James P. LaCoste, Jr., and Keith LaCoste, sued SCI Alabama Funeral Services, Inc., alleging fraud, suppression, and breach of contract in connection with charges SCI imposed for the burial of James P. LaCoste, Sr. The complaint alleged that SCI improperly charged the LaCostes for items that should have been covered by burial policies issued on the life of James LaCoste, Sr., and that SCI misrepresented to them that the charges were "minimum charges" that were not covered by the policies.
James LaCoste, Sr., had purchased two burial policies from Brown-Service Insurance Company, a branch of Liberty National Life Insurance Company, and named his wife, Virginia LaCoste, as the beneficiary. Brown-Service contracted with SCI funeral homes to provide the goods and services to which the beneficiaries of its policies are entitled. After the death of James P. LaCoste, Sr., his sons went to Roche-Belmany funeral home to arrange the funeral. The sons presented the policies and were told by Tim Herrington, a funeral home representative, that the policies would not cover the full cost of the services. Herrington presented the sons with a bill for the services, which they delivered to their mother. Mrs. LaCoste paid the full amount of the bill, but in this lawsuit she claims that she was over-charged approximately $1,000, consisting of a $755 funeral director's fee, a $60 viewing fee, an $80 fee for a removal vehicle, and a $160 lead vehicle charge. SCI contended that those charges were allowed by the Brown-Service policy and that the expenses are charged to all of its customers.
SCI moved for a summary judgment. The trial court entered a partial summary judgment in favor of SCI as to the LaCostes' fraud, misrepresentation, and suppression claims, and certified the judgment as final under Rule 54(b), Ala.R.Civ.P. The breach of contract claim remains pending. The LaCostes appeal from the summary judgment. This case was deflected to this court by the Supreme Court pursuant to § 12-2-7(6), Ala. Code 1975.
A summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P.; Bussey v. JohnDeere Co., 531 So.2d 860, 862 (Ala. 1988). The party moving for a summary judgment must present, in support of its motion, evidence that would be admissible at *Page 79 
trial. Rule 56(e), Ala.R.Civ.P. When the moving party makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmoving party to rebut the showing by presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870 (Ala. 1989). On review of the trial court's judgment, we are required to view the record in a light most favorable to the nonmovant and to resolve all reasonable doubts in favor of the nonmovant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412,413 (Ala. 1990).
The LaCostes argue that the trial court improperly entered the summary judgment because, they argue, they presented substantial evidence in support of their claims against SCI. Section 6-5-101, Ala. Code 1975, which gives a party damaged by fraud a right of action, reads:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
To succeed on their fraud claim, the LaCostes were required to show: "(1) misrepresentation of a material fact (2) made willfully to deceive or recklessly without knowledge (3) which was justifiably relied upon by the plaintiff under the circumstances and (4) which caused damage as a proximate consequence." Bama Budweiser of Montgomery, Inc. v.Anheuser-Busch, Inc., 611 So.2d 238, 244 (Ala. 1992). Thus, a misrepresentation may be actionable whether it is made willfully, recklessly, or mistakenly. Thomas v. Halstead,605 So.2d 1181 (Ala. 1992). A material fact is defined as one that would induce a person to act. Alfa Mut. Ins. Co. v.Northington, 561 So.2d 1041 (Ala. 1990).
The LaCostes take issue with several of the trial court's conclusions, upon which it based the summary judgment. First, they dispute the trial court's conclusion that "there is absolutely no evidence from which a jury could reasonably conclude that Roche-Belmany made any misrepresentations to or suppressed any facts from the Plaintiffs in regard to the charges for the subject funeral and/or the charges to be covered by the subject burial policies." The evidence before the trial court on this issue consists of deposition testimony. Richard M. Pennington, an SCI representative, testified that Roche-Belmany provided to the LaCostes everything that was covered by the burial policy. Tim Herrington, the funeral home representative, testified that:
 "[w]hen someone hands me a burial policy, I explain to them that it is a merchandise policy and that it covers a casket and certain professional fees which are outlined by the burial policy."
He stated that the funeral director and staff service charges are minimum fees that every family is charged, even in "straight policy funerals."
However, Thomas M. Boulware III, the representative from Liberty National, testified that a funeral director is not authorized or entitled to charge for director and staff services in a "straight policy funeral." He further stated that those services are provided for in a "straight policy funeral arrangement," and that, although a funeral home may occasionally charge for such services, if Liberty National finds out about such charges, it would contact the funeral home and insist that it refund the money. Furthermore, the burial policy states that the policy entitles the policyholder to funeral benefits "and such assistance as is proper in conducting the funeral, and to provide a place where such funeral, memorial or other services may be held." The evidence creating the conflict regarding the propriety of the additional charges that Mrs. LaCoste was required to pay is substantial and therefore is sufficient to defeat the summary judgment motion.
Likewise, the same facts support the LaCostes' suppression claim. To make out a suppression claim, a plaintiff must show *Page 80 
that the defendant had a duty to disclose a material fact and failed to do so, that the concealment or failure to disclose induced the plaintiff to act, and that the plaintiff suffered actual damage as a result. Hines v. Riverside Chevrolet-Olds,Inc., 655 So.2d 909, 918 (Ala. 1994). One may be liable for suppression only if he has knowledge of the fact allegedly suppressed and only if he is under a duty to disclose. A duty to disclose may arise from a confidential relationship, from a request for information, or from the circumstances of the case.Id.; § 6-5-102, Ala. Code 1975. "If a plaintiff offers evidence of particular circumstances creating an inference that the defendant should have disclosed certain material facts, then whether the defendant had a duty to communicate those facts is for the jury to determine." Hines, supra, at 918.
There was substantial evidence before the trial court to support a finding that Herrington, who had worked for SCI for 10 years and who stated that approximately 80% of his business involves servicing burial policies, had superior knowledge regarding the policy coverage versus the valid funeral costs and likely would have known that the charges may have been improper. Furthermore, because the LaCostes went to SCI requesting services, and relied on SCI to fairly interpret and honor the burial policy, and because SCI had reason to expect the LaCostes to be influenced by its decision not to disclose information regarding what expenses the policy covered, there was substantial evidence of the existence of a relationship on which to base a finding of a duty to disclose. Hines, supra, at 920. There was substantial evidence that a duty to disclose existed under the circumstances and that that duty was breached. Therefore, the trial court erred in entering the summary judgment on the LaCostes' suppression claim.
The LaCostes also argue that the trial court improperly held that, because "no representations were made to Mrs. LaCoste . . . there is no evidence from which a jury could reasonably conclude that Mrs. LaCoste even knew of, much less relied on, the representations allegedly made to her sons." It is not necessary for a party to prove that a misrepresentation was made directly to the person who claims to have been injured in order for that person to recover for fraud. Thomas v. Halstead,supra at 1184; Danley v. Murphy, 658 So.2d 483
(Ala.Civ.App. 1994). There exists a duty not to make a false representation to those whom a defendant intends, for his own purposes, to be reached and influenced by the representation.Colonial Bank of Alabama v. Ridley Schweigert, 551 So.2d 390,396 (Ala. 1989). "If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place." Thomas,supra, at 1184, (citing, 37 C.J.S. Fraud § 60, p. 344 (1943); Sims v. Tigrett, 229 Ala. 486, 158 So. 326 (1934)).
There was evidence before the trial court that Mrs. LaCoste knew of the representations Herrington made to her sons. The trial court was presented with excerpts of the LaCostes' depositions and the deposition of Boulware, a Liberty National representative. James LaCoste, Jr., stated in deposition testimony:
 "I presented Mr. Herrington with the policies. . . . Asked him — we wanted whatever was entitled by the policies. And in substance Mr. Herrington said that he accepted the policies and informed us that the cost associated with . . . or covered by the policies was restricted by a change in the law. Liberty National would honor only a certain portion of the cost toward the full funeral service or burial service."
Keith LaCoste stated in deposition testimony that "Mr. Herrington stated as a fact that the law had changed and Liberty National wasn't honoring the policies as stated." Mrs. LaCoste testified that she did not speak with Herrington either before or after she received the bill from Roche-Belmany. She stated that her sons returned home after meeting with Herrington and that they discussed the bill, and that she was shocked at the amount of the bill. She stated, "I thought when I presented the policy, that we would use it just like it was." She further stated "I just think it was misrepresentation . . . by the funeral home for the policy." We believe that this evidence created a genuine *Page 81 
issue of material fact as to whether Mrs. LaCoste knew of and relied on Herrington's representation that she owed money for certain services that he claimed were not covered by the burial policy.
The LaCostes also challenge the trial court's determination that "James P. LaCoste, Jr., and Keith LaCoste have no standing to assert any fraud, misrepresentation or suppression-based claims since the undisputed evidence reveals that they suffered no damages as a result of the alleged misrepresentation/suppression." The trial court noted that the sons had no ownership interest in the policies, had not paid any of the premiums, and did not pay any of the charges for the funeral. To make out a prima facie case of fraud, one of the elements that a plaintiff must show is that he has been damaged. Long-Lewis Hardware Co. v. Lightsey, 392 So.2d 545
(Ala.Civ.App. 1980), cert. denied, 392 So.2d 548 (Ala. 1981);Bama Budweiser, supra, at 244. The LaCostes correctly assert that the damage requirement may be satisfied if there is evidence of a breach of a legal duty and if there is evidence from which actual damage can be inferred, in which case an award of nominal damages is appropriate. Lightsey, 392 So.2d at 546. The LaCostes argue that there is evidence showing that the sons were nominally damaged; nominal damage would give them standing to sue. This court has held that "in order to recover nominal damages for fraud, the plaintiff need not show the exact extent of his damages, but only that he has been damaged." Id. at 547. The injury may be either compensatory, or a noncompensable violation of a legally protected right. FirstBank of Boaz v. Fielder, 590 So.2d 893 (Ala. 1991). Our Supreme Court has held that, while there is no requirement that a plaintiff show monetary damages to recover nominal and/or punitive damages, "the focus of [the Supreme] Court has been on the sufficiency of the evidence to support a finding by the jury that the plaintiff has been injured." Id. at 899. Thus, the lack of evidence that the sons incurred any monetary damage does not, by itself, preclude them from bringing an action for fraud on their own behalf. However, the deposition testimony of the sons, as well as the record as a whole, is devoid of any evidence that they were injured in any way by the alleged misrepresentations.
We find this case distinguishable from National States Ins.Co. v. Jones, 393 So.2d 1361 (Ala. 1980), which the LaCostes cite in support of their contention that the sons have standing to sue. The plaintiff in Jones was the administratrix of her elderly aunt's estate. After the aunt's death, she sued, alleging fraud in the sale of her aunt's health insurance policies. The court found that the sales representations regarding the policies were made to and directed at the plaintiff, that the plaintiff was responsible for policy premiums, and that the plaintiff was billed for her aunt's medical expenses. The court held that "[t]he consideration for these contracts was to and did flow from Plaintiff. Thus, Plaintiff has standing and a cause of action." Id. at 1364. In the present case, the LaCoste sons assert only that the funeral home dealt directly with them when it allegedly made misrepresentations and suppressed material facts, but they make no showing of injuries suffered as a result thereof. Therefore, because they failed to present substantial evidence of the existence of a genuine issue of material fact on their claims, the summary judgment on the sons' fraud claims was proper.
Finally, the LaCostes argue that the trial court erred in striking portions of Mrs. LaCoste's affidavit submitted in opposition to the motion for summary judgment. Because our review of the evidence that was considered by the trial court in ruling on the motion for summary judgment indicates substantial evidence creating genuine issues of material fact, we need not address this issue.
For the above reasons, the trial court's entry of a summary judgment is affirmed as to James LaCoste, Jr., and Keith LaCoste's fraud-related claims, but it is reversed as to the claims asserted by Mrs. LaCoste.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., concurs.
THIGPEN, J., concurs in the result. *Page 82